# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CYNTHIA DAVIS,

      Plaintiff,                                 CIVIL ACTION NO. 07-12744

    vs.                                      DISTRICT JUDGE THOMAS L. LUDINGTON

                                          MAGISTRATE JUDGE MONA K. MAJZOUB

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

**RECOMMENDATION:** This Court recommends that Plaintiff's Motion for Summary Judgment (Docket no. 10) be DENIED, and that of Defendant (Docket no. 12) GRANTED, as there is substantial evidence in the record that Plaintiff retains the residual functional capacity to perform a limited range of medium work.

\*\*\*

Plaintiff filed an application for Supplemental Security Income with a protective filing date of October 29, 2004 alleging that she had been disabled on December 13, 2004[1] as a result of back pain, anxiety and depression, diabetes, high blood pressure, heart problems and carpal tunnel syndrome. (TR 31, 69, 86, 91, 118-19). The Social Security Administration denied benefits. (TR 31). A requested *de novo* hearing was held on October 18, 2006 before Administrative Law Judge (ALJ) Joseph E. Brezina. (TR 277). The ALJ subsequently found that the claimant was not entitled to Supplemental Security Income because she had not been under a disability since the date the

---

[1] Plaintiff originally filed with a disability onset date of April 1, 1997 and amended the alleged onset date at the hearing.

application was filed. (TR 24). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 5). The parties filed Motions for Summary Judgment. The issue Plaintiff raises for review is whether the ALJ's decision is supported by substantial evidence.

Plaintiff was 51 years old at the time of the administrative hearing. (TR 279). Plaintiff has a ninth grade education. (TR 284). Plaintiff was employed for two months in 1994 as the caretaker for a handicapped adult and later employed as a part-time stock person at Kmart from 1994 to 1997. (TR 284). Plaintiff testified that as a stock person she emptied pallets, stocked shelves and swept the floors. (TR 285). She estimated that she lifted about ten pounds when stocking clothing. (TR 285). Plaintiff testified that now she cannot lift more than five or ten pounds. (TR 289).

Plaintiff stopped working in 1997 when she began getting numbness in her hands and started dropping things. (TR 285). In 2003 Plaintiff underwent surgery on both hands for her carpal tunnel syndrome. (TR 121, 157). She testified that her hand also goes numb when she writes. (TR 286). Plaintiff wears braces on both hands and wrists and when she reads she has to take breaks and wear the braces because her hands fall asleep. (TR 97, 141). Plaintiff also has shooting pains and numbness in her legs and testified that her feet "go to sleep" on her. (TR 285-87). Plaintiff complains of lower back pain extending into her right hip. (TR 287). Plaintiff is also treated for diabetes. (TR 287).

Plaintiff testified that she can only sit for twenty minutes before she has to stand up or move around. (TR 288). She can only stand for ten to fifteen minutes before her hips hurt and she cannot walk more than half of a block. (TR 99, 288-89). Plaintiff is able to drive but she testified that driving hurts her back and legs. (TR 96, 292). Plaintiff testified that she received cortisone shots

2

in the past for her back. However, she had no insurance and she can no longer get the shots. (TR 293). Plaintiff reported that she shops two to three times a week for thirty to forty-five minutes on average. (TR 96). Plaintiff lives with her mother and daughter who support her. (TR 288). Plaintiff prepares her own meals. (TR 138). Plaintiff can no longer watch her grandchildren or play with them at the park and she can no longer do heavy housework or yardwork. (TR 94, 292).

Plaintiff suffers from anxiety and depression. (TR 289). She testified that her medication helps with the anxiety. (TR 290). Plaintiff cries a lot, lies down for up to fifty percent of each day and does not want to be around people. (TR 290-91).

The Vocational Expert (VE) classified Plaintiff's past work as a store laborer as medium exertion; however, it was light as Plaintiff performed it. (TR 296). The ALJ concluded that Plaintiff's past work as a home health aide was not long enough to be significant. (TR 295). Based on Plaintiff's posted earnings, the ALJ concluded that Plaintiff had no significant past relevant work to take into consideration. (TR 296). The VE testified that there were no jobs for Plaintiff to perform if her testimony were fully accepted[2]. (TR 297).

The ALJ asked the VE to consider a hypothetical person of Plaintiff's age, education and past work experience, requiring simple, unskilled work with up to three-step instructions, able to lift or carry up to 25 pounds frequently and 50 pounds occasionally, able to stand or walk with normal breaks for a total of six hours of an eight-hour workday and sit with normal breaks for a total of six hours in an eight-hour workday. (TR 297). Further the hypothetical person could perform pushing and pulling with the upper and lower extremities within the weight restriction, perform activities

---

[2]The VE opined that Plaintiff's pain and/or medication side effects resulting in Plaintiff lying down fifty percent of the time would be preclusive of all employment. (TR 297).

requiring bilateral manual dexterity for both gross and fine manipulation with reaching and handling, should avoid unprotected heights, moving machinery, vibrations and climbing ropes, ladders and scaffolds, and is able to occasionally stoop, crouch and climb ramps and stairs. (TR 297). The VE testified that there would be jobs available including some sedentary, light and medium exertion assembly jobs, sedentary, light and medium exertion hand inspection and simple inspection jobs, general laborer jobs such as light exertion mail sorter, some medium exertion stocking and warehouse laborer positions and sedentary exertion surveillance system monitor jobs. (TR 298). The VE testified that if the hypothetical were modified to consider an individual who could only lift or carry up to ten pounds frequently and twenty pounds occasionally, it would eliminate all of the medium exertion jobs. (TR 299). If the hypothetical were further modified to limit the person to lifting less than ten pounds frequently and not using upper extremities for reaching, pushing and pulling and unable to use feet and legs to operate foot and leg controls, the light exertion jobs would be eliminated and such an individual could only perform sedentary unskilled work, which would leave only the surveillance system monitor jobs. (TR 301).

### *Medical Evidence*

On a November 2004 Disability Report Plaintiff reported that she takes Atenolol and Lisinopril to control her blood pressure. (TR 122). She takes Lorazepam and Zoloft to control anxiety, Metformin for diabetes and Triazolom to help her sleep. (TR 123, 263). On May 11, 2005 Plaintiff reported that she was also starting to take Seroquel for anxiety. (TR 147).

Plaintiff treated with Parmod Jindal, M.D. from January 8, 2003 to August 22, 2004 for depression, anxiety, high blood pressure and diabetes. (TR 121). On October 22, 2003 Plaintiff underwent a transabdominal sonogram in response to abdominal and pelvic pain. (TR 168). No

adnexal mass or cyst was identified, visibility of the pancreas was poor secondary to bowel gas, and the examination was "otherwise unremarkable." (TR 168-69).

Plaintiff treated with Leo D. Ottoni, Jr., M.D. between June 18, 2003 and November 20, 2003 for complaints of problems with both hands, including numbness which wakes her up at night. (TR 154-60). Dr. Ottoni noted that a prior EMG nerve conduction test was positive for bilateral carpal tunnel syndrome without denervation, mild in severity and worse in the left than the right extremity. (TR 154). Plaintiff was positive for bilateral forearm compression and Phalen test. (TR 156). X-rays showed no evidence of fracture, dislocation or any degenerative change and carpal alignment appeared satisfactory. (TR 154). Plaintiff was treated with bilateral cortisone injections but remained symptomatic. (TR 154, 156). On July 25, 2003 Plaintiff underwent right carpal tunnel release surgery. (TR 121, 157). On August 22, 2003 Plaintiff underwent left carpal tunnel release surgery. (TR 157). On September 8, 2003 Dr. Ottoni noted that Plaintiff was doing "pretty well" with the right hand and the left hand was still sore. (TR 158). He encouraged her to work on range of motion and strengthening exercises. (TR 158). On October 6, 2003 Dr. Ottoni noted that Plaintiff was doing "well" with the right hand and the left hand was still quite sore, although sensation had improved. (TR 159). On November 20, 2003 Dr. Ottoni reported that Plaintiff continued to have some paresthesias in both hands. (TR 160).

Plaintiff underwent a state agency psychiatric evaluation on May 29, 2004 with A.C. Shah, M.D. (TR 173-76). Plaintiff reported having anxiety problems for the past three to four years. (TR 173). Plaintiff reported suffering anxiety attacks in which she feels like she is choking, is short of breath, hyperventilates, her heart rate increases, she feels sweaty with cold clammy hands and feels as if she may pass out. (TR 173). She reported that the anxiety attacks come when she thinks about

her marriage problems or is stressed out or depressed. (TR 173). She reported that she feels better when she takes the Paxil and Ativan prescribed by her family doctor. (TR 173-74). She reported that she started feeling depressed three to four months after she separated from her husband. (TR 173). Plaintiff denies any suicidal ideas, hallucinations or paranoia. (TR 175). Dr. Shah diagnosed chronic generalized anxiety disorder, depressed type adjustment disorder and a GAF of 50. (TR 175).

On June 17, 2004 Leonard Balunas, Ph.D., a state agency medical consultant, completed a Psychiatric Review Technique. (TR 177). Dr. Balunas concluded that Plaintiff had mild limitations in activities of daily living, no difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace and no episodes of decompensation. (TR 187). Dr. Balunas also completed a Mental Residual Functional Capacity Assessment and concluded that because of her adjustment disorder and generalized anxiety, Plaintiff was moderately limited in her ability to remember and carry out detailed instructions and maintain prolonged concentration. (TR 193). Dr. Balunas further noted that "[d]espite these limitations, she is able to perform unskilled work." (TR 193).

On January 7, 2005 Linda Brundage, Ed.D. completed a Psychiatric Review Technique form and concluded that Plaintiff had moderate limitations in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace and no episodes of decompensation. (TR 220). Dr. Brundage attributed Plaintiff's difficulties with memory and concentration to her medications. (TR 222). Dr. Brundage opined that Plaintiff is able to do unskilled, simple, repetitive work. (TR 226).

Plaintiff treated with Dr. Mahadevan from October 4, 2004 through November 7, 2005. (TR 263-69). Dr. Mahadevan noted that Plaintiff had a history of diabetes, hypertension, anxiety with depression and irritable bowel syndrome. (TR 209). Notes from a January 5, 2005 examination note that Plaintiff complained of back pain, but her blood sugar was "under control." (TR 266). The January 5, 2005 notes also indicate that Plaintiff has arthritis of the back, however, notes from a June 14, 2005 examination state "[R]ule out arthritis of back." (TR 265). On June 14, 2005 Plaintiff also complained of back pain and the treating source noted that Plaintiff "[g]ot relief with Darvocet." (TR 265).

Plaintiff treated with Dr. Bhardwaj from September 14, 2005 through August 28, 2006. (TR 246-61). On September 14, 2005 and January 1, 2006 Dr. Bhardwaj noted that Plaintiff had pain in the right hip on range of motion. (TR 256, 261-62). In the November 21, 2005 report Dr. Bhardwaj noted that Plaintiff had back pain with decreased range of motion. (TR 260). He also noted that Plaintiff was fatigued and had a depressed affect and diagnosed depression, anxiety and obesity. (TR 259). Dr. Bhardwaj consistently diagnosed depression. (TR 254, 257, 258, 262). Dr. Bhardwaj continued to note Plaintiff's pain in her right hip through July 11, 2006 and noted pain in both hips and legs from July 11, 2006. (TR 247-48)

**ADMINISTRATIVE LAW JUDGE'S DETERMINATION:**

The ALJ found that although Plaintiff had not engaged in substantial gainful activity since December 13, 2004 and suffered from bilateral carpal tunnel syndrome status post bilateral release in 2004, non-insulin dependent diabetes mellitus, hypertension, subjective complaints of chronic back pain, depression with a generalized anxiety disorder and an adjustment disorder, all severe impairments, she did not have an impairment or combination of impairments that met or equaled the

7

Listing of Impairments. (TR 19). The ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible and her exertional and non-exertional limitations allowed her to perform a significant range of medium work limited to simple, unskilled work tasks and concluded that she was capable of performing a significant number of jobs in the economy. (TR 19, 23). Therefore, she was not suffering from a disability under the Social Security Act. (TR 24).

**STANDARD OF REVIEW:**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial

evidence also supports the opposite conclusion. *See Her v. Commissioner*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**DISCUSSION AND ANALYSIS:**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     she was not presently engaged in substantial gainful employment; and

(2)     she suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     she did not have the residual functional capacity to perform her relevant past work.

*See* 20 C.F.R. §§ 416.920(a)-(f). If Plaintiff's impairments prevented her from doing her past work, the Commissioner, at step five, would consider her residual functional capacity ("RFC"), age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. *See* 20 C.F.R. §§ 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualification to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff maintains that substantial evidence does not exist on the record that she was capable of performing a limited range of medium work. She also argues that the ALJ improperly evaluated her credibility, particularly with regard to the intensity, persistence and limiting effects of her symptoms. (Docket no. 10).

*Plaintiff's Credibility*

Plaintiff argues that the ALJ did not properly assess her complaints of pain, limitations and credibility. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters,* 127 F.3d at 531. Credibility assessments are not insulated from judicial review. Despite deference due, such a determination must nevertheless be supported by substantial evidence. *See id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

Furthermore, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). In addition

10

to objective medical evidence, the ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (TR 22). The ALJ specifically noted that during the period in question the Plaintiff was treated for various ailments, however, there "is no evidence to show that these impairments caused more than minimal limitation in her ability to perform basic work activities and/or lasted for at least 12 months." (TR 22). The ALJ specifically referred to Plaintiff's ability to do light housework, drive, shop, cook, socialize, attend church, watch television, read and visit with her grandchildren as activities that do not support her allegations of more than minimal limitations. (TR 22, 94, 137-40). The ALJ also noted that Plaintiff can take care of her personal hygiene without assistance. (TR 22, 138).

The ALJ noted with regard to Plaintiff's mental symptoms that she has not seen a psychiatrist or had any admissions or counseling. (TR 21, 174). The ALJ noted that Plaintiff takes Paxil and Ativan as needed and Plaintiff reports that she "feels better about her anxiety and depression." (TR 21, 174). The ALJ noted that the state agency consultant's opinion that Plaintiff had the physical residual functional capacity for a limited range of medium work activity with additional postural and

11

environmental limitations was supported by Cynthia Shelby-Lane, M.D.'s findings in her consultative physical examination of January 18, 2005. (TR 22, 228-33). Dr. Shelby-Lane noted that Plaintiff was able to get on and off the examining table without difficulty and she did not use a cane or other aid to walk. (TR 232). With respect to Plaintiff's carpal tunnel syndrome, the ALJ noted that Dr. Shelby-Lane found that Plaintiff's grip strength was equal bilaterally and her gross and fine dexterity appear bilaterally intact. (TR 228, 232). The ALJ further noted that Plaintiff's back pain was diagnosed based upon subjective complaints. (TR 22). Further, the record lacks objective medical evidence supporting Plaintiff's claims that she can lift only 5 to 10 pounds.

In view of the evidence, the ALJ could reasonably conclude that Plaintiff's subjective complaints regarding the intensity, persistence and limiting effects of the symptoms were not entirely credible. (TR 22). The ALJ's determinations regarding Plaintiff's credibility are supported by substantial evidence.

### *ALJ's Determination that Plaintiff is Capable of Performing a Limited Range of Medium Exertion Work*

Plaintiff argues that the ALJ's finding that she has the residual functional capacity ("RFC") to perform a limited range of medium work is contradicted by assessments of Plaintiff's treating physicians, Dr. Mahadevan and Dr. Bhardwaj. (Docket no. 10 at 16). Plaintiff also argues that the ALJ erred in relying on a consulting examiner's opinion regarding Plaintiff's exertional limitations because the opinion of a "medical advisor" which is based on a review of the medical records rather than on a medical examination is entitled to less weight than the report of an examining physician. (Pl's Br. at 14-15, docket no. 10).

It is well settled that the opinions and diagnoses of treating physicians are generally accorded substantial deference. The ALJ must give a treating physician's opinion controlling weight if it is

well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 416.927(d)(2)-(4). However, treating physicians' opinions are "only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *See Cutlip v. Sec'ty of Health and Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994).

The ALJ considered both Dr. Mahadevan's and Dr. Bhardwaj's medical examination reports containing exertional limitations. (TR 21). The ALJ found that the "exertional limitations identified by the claimant's treating physicians are out of proportion with the remaining objective medical evidence contained in the record and, although they were given appropriate consideration, they were not given controlling weight." (TR 23).

The ALJ found that Plaintiff had the RFC to perform medium[3] exertional work with non-exertional limitations as follows: Perform simple, unskilled work requiring only one, two or three-step instructions, lift or carry up to twenty-five pounds frequently and fifty pounds occasionally, stand and/or walk with normal breaks for a total of six hours in an eight-hour workday, sit with normal breaks for a total of six hours in an eight-hour workday, perform pushing and pulling motions with her upper and lower extremities within the aforementioned weight restriction, perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching, avoid unprotected heights, moving machinery, vibrations, climbing ropes, scaffolds and ladders, and only occasionally climb ramps and stairs, stoop and/or crouch. (TR 19-20).

On December 1, 2004 Dr. Mahadevan completed a Medical Examination Report and opined

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

13

that Plaintiff could frequently lift and/or carry up to five pounds, occasionally lift and/or carry up to ten pounds, stand for ten minutes in an eight-hour workday, walk for ten minutes in an eight-hour workday, sit for thirty minutes in an eight-hour workday, is unable to reach, push and/or pull with her hands and arms, could perform grasping and fine manipulating and could operate foot and leg controls. (TR 268). The record indicates that Dr. Mahadevan treated Plaintiff from October 4, 2004 through November 7, 2005, however, as the ALJ points out, there are no further medical signs or laboratory findings supporting his determination that Plaintiff had the extreme exertional limitations appearing in the December 1, 2004 report. (TR 263-69). Dr. Mahadevan's notes indicate that Plaintiff's blood sugar was "under control" and that she was getting pain relief from Darvocet. (TR 266, 265). Further, there was no clear diagnosis that Plaintiff suffered arthritis of her back. (TR 265).

On April 6, 2005 Dr. Mahadevan opined that Plaintiff "suffers from Diabetes, Hypertension, Depression and Irritable Bowel Syndrome. She is totally disabled because of the above conditions." (TR 264). Although it is proper for the ALJ to give a treating physician's opinion controlling weight, the Social Security Administration Regulations do not afford the same deference to opinions on an issue reserved to the Commissioner, such as a final determination of "disabled" or "unable to work" and the ALJ properly makes the determination of the claimant's residual functional capacity. Dispositive administrative findings relating to the determination of a disability are within the purview of the Commissioner. *See* 20 C.F.R. § 416.927(e). Further, the ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner," including opinions and statements that Plaintiff is disabled and opinions on Plaintiff's residual functional capacity. 20 C.F.R. 416.927(e)(3). Dr. Mahadevan's statement and opinion that Plaintiff "is totally

14

disabled" was a conclusion on an issue properly reserved to the Commissioner. The ALJ did not err in making his own administrative findings regarding Plaintiff's disability and ability to return to work.

On November 21, 2005 Dr. Bhardwaj completed a Medical Examination Report request by the State and opined that Plaintiff could frequently lift and/or carry less than ten pounds, could occasionally lift and/or carry ten pounds, could stand and/or walk less than two hours in an eight-hour workday, sit less than six hours in an eight-hour workday, that she required no assistive devices for ambulation, had the ability to perform simple grasping and fine manipulation but could not reach, push or pull with the hands and arms and could not operate foot or leg controls. (TR 260). The record indicates that Dr. Bhardwaj treated Plaintiff from September 14, 2005 through August 28, 2006. (TR 247-61). Dr. Bhardwaj noted that Plaintiff had mental limitations in sustained concentration and social interaction. (TR 260). Again, however, the extreme exertional limitations set forth by Dr. Bhardwaj are not consistent with objective medical evidence in the record.

The record contains assessments by state agency medical consultants and examiners that are consistent with the ALJ's RFC. An ALJ must evaluate all of the medical opinion evidence regardless of its source, including the opinions of non-examining medical consultants. 20 C.F.R. § 416.927(d), (f); *see, e.g. Coombs v. Comm'r of Soc. Sec.*, 459 F.3d 649, 651 (6th Cir. 2006)(en banc). Plaintiff relies on *Miracle v. Celebrezze*, 351 F.2d 361 (6th Cir. 1965) for the premise that substantial evidence does not support the denial of disability benefits when it is based almost exclusively on a medical report by a doctor who made a single examination of the claimant, where two other doctors who had treated the claimant over several years stated that the claimant was totally incapacitated. (Docket no. 10 at 20). However, in *Miracle* the court noted that the physician's

15

testimony at issue was also based on the incorrect assumption that the claimant had been wearing his steel back brace for only one year when he had been wearing it for approximately ten years. Furthermore, claimant's physician testified that none of the nine various pain-killing drugs and sedatives prescribed by him were any appreciable help to alleviating claimant's pain and distress and the Hearing Examiner relied on the isolated remarks of only one or two medical reports when he made his findings. *Miracle*, 351 F.2d at 373. The *Miracle* case, therefore, does not stand for the proposition that the ALJ can never rely upon an assessment made by a doctor or medical examiner who has only examined the Plaintiff once or based his findings on a review of the medical records.

      The ALJ cited a February 7, 2005 Physical Residual Functional Capacity Assessment completed by state agency medical consultant Russel E. Holmes, M.D. (TR 237-39). Dr. Holmes' exertional limitations are consistent with the ALJ's RFC, limiting Plaintiff to occasionally lifting fifty pounds, frequently lifting twenty-five pounds, standing and/or walking about six hours in an eight-hour workday and sitting about six hours in an eight-hour workday, with no limitations on pushing and/or pulling except those weight limitations set forth with respect to lifting and carrying. (TR 19-20, 239). The ALJ's postural and environmental restrictions are more restrictive than those of Dr. Holmes. (TR 19-20, 240, 242). The record contains a Physical Residual Functional Capacity Assessment completed by an enhanced examiner and dated May 11, 2004 that is also consistent with Dr. Holmes's exertional limitations and the ALJ's RFC. (TR 110-17). The ALJ's RFC for medium work, including unlimited ability to push and pull is supported by substantial evidence and to the extent the ALJ did not adopt the exertional limitations set forth by Dr. Mahadevan and Dr. Bhardwaj, he specifically set forth the weight he gave these opinions and the reasons for his

16

determination[4]. (TR 23).

Finally, Plaintiff argues that the ALJ's finding that Plaintiff could perform work requiring bimanual dexterity for fine and gross manipulation and handling is not supported by substantial evidence because Dr. Ottoni reported on June 18, 2003 that Plaintiff had bilateral carpal tunnel syndrome and carpal tunnel surgery was performed on July 25, 2003 and August 22, 2003. (TR 156-57). There is substantial evidence in the record to support the ALJ's finding that Plaintiff can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching. On November 20, 2003 Dr. Ottoni noted that Plaintiff was "doing fairly well with her hand," had some persistent sensitivity in the scar of the left hand and some paresthesias in both hands. (TR 20, 160). Plaintiff complained to Dr. Shelby-Lane of chronic pain and paresthesias as a result of her carpal tunnel syndrome in both hands, but Dr. Shelby-Lane found that Plaintiff's grip strength was equal bilaterally and her gross and fine dexterity appeared bilaterally intact. (TR 22, 228, 232). Further, both Dr. Mahadevan and Dr. Bhardwaj opined that Plaintiff could perform simple grasping and fine manipulating with both hands and Dr. Holmes's assessment notes that Plaintiff has no manipulative limitations. (TR 260, 268).

The ALJ properly considered all of the medical evidence and his administrative findings are based on substantial evidence in the record.

***Hypothetical Question to Vocational Expert***

---

[4]Plaintiff mentions her psychiatric complaints and assessments at the conclusion of her brief; however, she does not challenge specific issues relating to the ALJ's findings regarding Plaintiff's mental impairments. The Court notes that the ALJ specifically addressed Plaintiff's mental impairments and the RFC takes into account Plaintiff's mental limitations. (TR 21-23). The ALJ's determination that Plaintiff could perform simple, unskilled work requiring up to three-step instructions is supported by substantial evidence. (TR 173-76, 193, 226).

In a hypothetical question posed to the vocational expert ("VE"), an ALJ is required to incorporate only those limitations which he finds credible and supported by the record. *See Casey v. Sec'y of Health and Human Serv.,* 987 F.2d 1230, 1235 (6th Cir. 1993). Therefore, in light of the ALJ's findings regarding the credibility of Plaintiff's statements, as set forth above, the VE's testimony that an individual with limitations to the severity and extent that Plaintiff testified to at the hearing would not be capable of performing any work activity at any level of exertion does not control, as Plaintiff asserts. (TR 296-97).

The ALJ is responsible for assessing Plaintiff's RFC based on all of the relevant evidence in the record. 20 C.F.R. § 416.946(c). The hypothetical to the VE incorporates Plaintiff's RFC and limitations as determined by the ALJ. Therefore, the ALJ properly relied on the VE's testimony to find that Plaintiff can perform work that exists in significant numbers in the economy. (TR 24). The ALJ's findings regarding Plaintiff's ability to perform other work in the economy are supported by substantial evidence.

**RECOMMENDATION:**

In sum, the ALJ's decision was within the range of discretion allowed by law and is supported by substantial evidence. There is insufficient evidence for the undersigned to find otherwise. Therefore, Defendant's Motion for Summary Judgement should be granted, Plaintiff's Motion for Summary Judgment should be denied, and the instant Complaint dismissed.

**REVIEW OF REPORT AND RECOMMENDATION:**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes

a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: May 29, 2008                              s/Mona K. Majzoub_____
                                                 MONA K. MAJZOUB
                                                 UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: May 29, 2008                               \_s/Lisa Bartlett_____
                                                  Courtroom Deputy