UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CYNTHIA DAVIS,

        Plaintiff,

                                                                Case Number 07-12744-BC

v.                                                          Honorable Thomas L. Ludington

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____ /

## ORDER ADOPTING REPORT AND RECOMMENDATION, OVERRULING PLAINTIFF'S OBJECTION, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

On October, 29, 2004, Plaintiff Cynthia Davis ("Plaintiff") filed an application with Defendant Commissioner of Social Security ("Defendant") for supplemental security income. Plaintiff maintained that the following ailments rendered her disabled: back pain, anxiety and depression, diabetes, high blood pressure, heart problems, and carpal tunnel syndrome. Defendant denied her application, and Plaintiff sought de novo review by an administrative law judge ("ALJ"). The ALJ concluded that Plaintiff was not disabled. TR at 24.

Plaintiff sought review of the ALJ's decision before this Court. The parties filed cross-motions for summary judgment centered on whether the ALJ's determination was supported by substantial evidence. On May 29, 2008, Magistrate Judge Mona K. Majzoub issued a report and recommendation that this Court affirm the ALJ's decision, grant Defendant's motion for summary judgment, and deny Plaintiff's motion for summary judgment. Dkt. # 16. Plaintiff objected to the report and recommendation, raising several assignments of error. Dkt. # 17. For the reasons stated below, the Court will **ADOPT** the report and recommendation, **GRANT** Defendant's motion for summary judgment, and **DENY** Plaintiff's motion for summary judgment.

# I

Plaintiff does not dispute the facts as described by the magistrate judge. Rather, she believes the facts do not amount to substantial evidence supporting the ALJ's decision. The magistrate judge summarized the facts in this matter as follows:

> Plaintiff was 51 years old at the time of the administrative hearing. (TR 279). Plaintiff has a ninth grade education. (TR 284). Plaintiff was employed for two months in 1994 as the caretaker for a handicapped adult and later employed as a part-time stock person at Kmart from 1994 to 1997. (TR 284). Plaintiff testified that as a stock person she emptied pallets, stocked shelves and swept the floors. (TR 285). She estimated that she lifted about ten pounds when stocking clothing. (TR 285). Plaintiff testified that now she cannot lift more than five or ten pounds. (TR 289).
>
> Plaintiff stopped working in 1997 when she began getting numbness in her hands and started dropping things. (TR 285). In 2003 Plaintiff underwent surgery on both hands for her carpal tunnel syndrome. (TR 121, 157). She testified that her hand also goes numb when she writes. (TR 286). Plaintiff wears braces on both hands and wrists and when she reads she has to take breaks and wear the braces because her hands fall asleep. (TR 97, 141). Plaintiff also has shooting pains and numbness in her legs and testified that her feet "go to sleep" on her. (TR 285-87). Plaintiff complains of lower back pain extending into her right hip. (TR 287). Plaintiff is also treated for diabetes. (TR 287).
>
> Plaintiff testified that she can only sit for twenty minutes before she has to stand up or move around. (TR 288). She can only stand for ten to fifteen minutes before her hips hurt and she cannot walk more than half of a block. (TR 99, 288-89). Plaintiff is able to drive but she testified that driving hurts her back and legs. (TR 96, 292). Plaintiff testified that she received cortisone shots in the past for her back. However, she had no insurance and she can no longer get the shots. (TR 293). Plaintiff reported that she shops two to three times a week for thirty to forty-five minutes on average. (TR 96). Plaintiff lives with her mother and daughter who support her. (TR 288). Plaintiff prepares her own meals. (TR 138). Plaintiff can no longer watch her grandchildren or play with them at the park and she can no longer do heavy housework or yardwork. (TR 94, 292).
>
> Plaintiff suffers from anxiety and depression. (TR 289). She testified that her medication helps with the anxiety. (TR 290). Plaintiff cries a lot, lies down for up to fifty percent of each day and does not want to be around people. (TR 290-91).
>
> The Vocational Expert (VE) classified Plaintiff's past work as a store laborer as medium exertion; however, it was light as Plaintiff performed it. (TR 296). The ALJ

concluded that Plaintiff's past work as a home health aide was not long enough to be significant. (TR 295). Based on Plaintiff's posted earnings, the ALJ concluded that Plaintiff had no significant past relevant work to take into consideration. (TR 296). The VE testified that there were no jobs for Plaintiff to perform if her testimony were fully accepted. (TR 297).

The ALJ asked the VE to consider a hypothetical person of Plaintiff's age, education and past work experience, requiring simple, unskilled work with up to three-step instructions, able to lift or carry up to 25 pounds frequently and 50 pounds occasionally, able to stand or walk with normal breaks for a total of six hours of an eight-hour workday and sit with normal breaks for a total of six hours in an eight-hour workday. (TR 297). Further the hypothetical person could perform pushing and pulling with the upper and lower extremities within the weight restriction, perform activities requiring bilateral manual dexterity for both gross and fine manipulation with reaching and handling, should avoid unprotected heights, moving machinery, vibrations and climbing ropes, ladders and scaffolds, and is able to occasionally stoop, crouch and climb ramps and stairs. (TR 297). The VE testified that there would be jobs available including some sedentary, light and medium exertion assembly jobs, sedentary, light and medium exertion hand inspection and simple inspection jobs, general laborer jobs such as light exertion mail sorter, some medium exertion stocking and warehouse laborer positions and sedentary exertion surveillance system monitor jobs. (TR 298). The VE testified that if the hypothetical were modified to consider an individual who could only lift or carry up to ten pounds frequently and twenty pounds occasionally, it would eliminate all of the medium exertion jobs. (TR 299). If the hypothetical were further modified to limit the person to lifting less than ten pounds frequently and not using upper extremities for reaching, pushing and pulling and unable to use feet and legs to operate foot and leg controls, the light exertion jobs would be eliminated and such an individual could only perform sedentary unskilled work, which would leave only the surveillance system monitor jobs. (TR 301).

### *Medical Evidence*

On a November 2004 Disability Report Plaintiff reported that she takes Atenolol and Lisinopril to control her blood pressure. (TR 122). She takes Lorazepam and Zoloft to control anxiety, Metformin for diabetes and Triazolom to help her sleep. (TR 123, 263). On May 11, 2005 Plaintiff reported that she was also starting to take Seroquel for anxiety. (TR 147).

Plaintiff treated with Parmod Jindal, M.D. from January 8, 2003 to August 22, 2004 for depression, anxiety, high blood pressure and diabetes. (TR 121). On October 22, 2003 Plaintiff underwent a transabdominal sonogram in response to abdominal and pelvic pain. (TR 168). No adnexal mass or cyst was identified, visibility of the pancreas was poor secondary to bowel gas, and the examination was "otherwise

unremarkable." (TR 168-69).

Plaintiff treated with Leo D. Ottoni, Jr., M.D. between June 18, 2003 and November 20, 2003 for complaints of problems with both hands, including numbness which wakes her up at night. (TR 154-60). Dr. Ottoni noted that a prior EMG nerve conduction test was positive for bilateral carpal tunnel syndrome without denervation, mild in severity and worse in the left than the right extremity. (TR 154). Plaintiff was positive for bilateral forearm compression and Phalen test. (TR 156). X-rays showed no evidence of fracture, dislocation or any degenerative change and carpal alignment appeared satisfactory. (TR 154). Plaintiff was treated with bilateral cortisone injections but remained symptomatic. (TR 154, 156). On July 25, 2003 Plaintiff underwent right carpal tunnel release surgery. (TR 121, 157). On August 22, 2003 Plaintiff underwent left carpal tunnel release surgery. (TR 157). On September 8, 2003 Dr. Ottoni noted that Plaintiff was doing "pretty well" with the right hand and the left hand was still sore. (TR 158). He encouraged her to work on range of motion and strengthening exercises. (TR 158). On October 6, 2003 Dr. Ottoni noted that Plaintiff was doing "well" with the right hand and the left hand was still quite sore, although sensation had improved. (TR 159). On November 20, 2003 Dr. Ottoni reported that Plaintiff continued to have some paresthesias in both hands. (TR 160).

Plaintiff underwent a state agency psychiatric evaluation on May 29, 2004 with A.C. Shah, M.D. (TR 173-76). Plaintiff reported having anxiety problems for the past three to four years. (TR 173). Plaintiff reported suffering anxiety attacks in which she feels like she is choking, is short of breath, hyperventilates, her heart rate increases, she feels sweaty with cold clammy hands and feels as if she may pass out. (TR 173). She reported that the anxiety attacks come when she thinks about her marriage problems or is stressed out or depressed. (TR 173). She reported that she feels better when she takes the Paxil and Ativan prescribed by her family doctor. (TR 173-74). S he reported that she started feeling depressed three to four months after she separated from her husband. (TR 173). Plaintiff denies any suicidal ideas, hallucinations or paranoia. (TR 175). Dr. Shah diagnosed chronic generalized anxiety disorder, depressed type adjustment disorder and a GAF of 50. (TR 175).

On June 17, 2004 Leonard Balunas, Ph.D., a state agency medical consultant, completed a Psychiatric Review Technique. (TR 177). Dr. Balunas concluded that Plaintiff had mild limitations in activities of daily living, no difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace and no episodes of decompensation. (TR 187). Dr. Balunas also completed a Mental Residual Functional Capacity Assessment and concluded that because of her adjustment disorder and generalized anxiety, Plaintiff was moderately limited in her ability to remember and carry out detailed instructions and maintain prolonged concentration. (TR 193). Dr. Balunas further noted that "[d]espite these limitations, she is able to perform unskilled work." (TR 193).

On January 7, 2005 Linda Brundage, Ed.D. completed a Psychiatric Review Technique form and concluded that Plaintiff had moderate limitations in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace and no episodes of decompensation. (TR 220). Dr. Brundage attributed Plaintiff's difficulties with memory and concentration to her medications. (TR 222). Dr. Brundage opined that Plaintiff is able to do unskilled, simple, repetitive work. (TR 226).

Plaintiff treated with Dr. Mahadevan from October 4, 2004 through November 7, 2005. (TR 263-69). Dr. Mahadevan noted that Plaintiff had a history of diabetes, hypertension, anxiety with depression and irritable bowel syndrome. (TR 209). Notes from a January 5, 2005 examination note that Plaintiff complained of back pain, but her blood sugar was "under control." (TR 266). The January 5, 2005 notes also indicate that Plaintiff has arthritis of the back, however, notes from a June 14, 2005 examination state "[R]ule out arthritis of back." (TR 265). On June 14, 2005 Plaintiff also complained of back pain and the treating source noted that Plaintiff "[g]ot relief with Darvocet." (TR 265).

Plaintiff treated with Dr. Bhardwaj from September 14, 2005 through August 28, 2006. (TR 246-61). On September 14, 2005 and January 1, 2006 Dr. Bhardwaj noted that Plaintiff had pain in the right hip on range of motion. (TR 256, 261-62). In the November 21, 2005 report Dr. Bhardwaj noted that Plaintiff had back pain with decreased range of motion. (TR 260). He also noted that Plaintiff was fatigued and had a depressed affect and diagnosed depression, anxiety and obesity. (TR 259). Dr. Bhardwaj consistently diagnosed depression. (TR 254, 257, 258, 262). Dr. Bhardwaj continued to note Plaintiff's pain in her right hip through July 11, 2006 and noted pain in both hips and legs from July 11, 2006. (TR 247-48).

Dkt. # 16 at 2-7.

The ALJ found that Plaintiff suffers from the severe impairments of bilateral carpal tunnel syndrome, non-insulin dependent diabetes, hypertension, chronic back pain, depression with a generalized anxiety disorder, and an adjustment disorder. AR at 19. The ALJ concluded that Plaintiff's "impairments cause significant limitation in [Plaintiff's] ability to perform basic work activities," but that Plaintiff does not meet "the specific criteria for any impairment." *Id.* The ALJ relied on the medical opinions of "the State Agency and consultative physicians." *Id.* The ALJ's review of the record acknowledged that Plaintiff's "medically determinable impairments could

reasonably be expected to produce the alleged symptoms, but [found] that [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." TR at 22. The ALJ noted Plaintiff's ability "to do light housework, drive, go shopping, cook, socialize, go to church, watch television, read, and visit her grandchildren." *Id.* In the ALJ's view, these activities supported the conclusion that Plaintiff's physical impairments do not render her disabled. *Id.*

Furthermore, the ALJ concluded that Plaintiff does not suffer from "significant mental limitations that would preclude her from performing simple unskilled work activity." TR at 23. In reaching that conclusion, the ALJ found that "the exertional limitations identified by [Plaintiff's] treating physicians are out of proportion with the remaining objective medical evidence . . . ." *Id.* A vocational expert opined that Plaintiff could perform available medium work activity, light work activity, and sedentary jobs. TR at 24.

II

The Commissioner of Social Security determines whether a claimant is disabled in accordance with a five step process. The claimant must demonstrate the four following criteria: (1) the claimant is not engaged in substantial gainful employment; (2) the claimant suffers from a severe impairment; (3) the impairment meets a "listed impairment;" and (4) the claimant does not retain the residual functional capacity to perform her relevant past work. 20 C.F.R. § 416.920(a)(4)(I-iv). At the fifth and final step, the commissioner determines whether the claimant is able to perform any other gainful employment in light of the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v).

The Court reviews Defendant's decision to determine whether its "factual findings . . . are supported by substantial evidence." *Tyra v. Secretary of Health and Human Services*, 896 F.2d 1024, 1028 (6th Cir. 1990) (*citing* 28 U.S.C. § 405(g)). Substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). A district court does not resolve conflicts of evidence or issues of credibility. *Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

III

Plaintiff's objection contends that the magistrate judge incorrectly concluded: (1) that substantial evidence supports a residual functional capacity for the performance of medium level work activity; and (2) that the ALJ properly relied on the medical opinions of non-examining physician and medical personnel over two treating sources. Dkt. # 17 at 3-4. Plaintiff's objection, however, does not assert that the magistrate judge misapplied applicable legal authority. Nor does it suggest any alternative legal authority.

First, Plaintiff contends that the record, as a whole, does not contain substantial evidence that Plaintiff can perform medium work activity. In her objection, Plaintiff also concedes that the activities that the ALJ noted (i.e. doing light housework, driving, shopping, etc.) demonstrate that Plaintiff is able to perform light or sedentary work activity. Dkt. # 17 at 3-4. As Plaintiff acknowledged, a "disability" is the "inability to do *any* substantial gainful activity by reason" of any physical or mental impairment which will last at least twelve months. Dkt. # 10 at 8; *see also* 20

C.F.R. § 404.1505(a). The vocational expert identified available employment of medium, light, and sedentary levels. Plaintiff's concession acknowledges evidence that supports the conclusion that Plaintiff is able to perform light and sedentary work. Albeit the vocational expert acknowledged that a person with Plaintiff's self-described limitations would be disabled, the ALJ found Plaintiff's testimony addressing her own limitations to lack credibility. *See* TR at 296-97. At this stage of review, it is inappropriate for the Court to make "credibility determinations." *Brainard*, 889 F.2d at 681 (citation omitted). Thus, the ALJ's determination – that Plaintiff did not meet the definition of disabled – was reasonable in light of the finding that Plaintiff's testimony lacked credibility in conjunction with the vocational expert's opinion that sedentary and light level jobs were available.

Second, Plaintiff maintains the magistrate judge placed undue emphasis on the opinions of non-treating medical personnel. The magistrate judge recognized that: (1) "[t]he ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record," dkt. # 16 at 12-12 (*citing* 20 C.F.R. § 416.927(d)(2)-(4)); and (2) "treating physicians' opinions are 'only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence.'" Dkt. # 16 at 13; (*quoting Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994)). The ALJ found that "the exertional limitations identified by [Plaintiff's] treating physicians are out of proportion with the remaining objective medical evidence contained in the record and, although they were given appropriate consideration, they were not given controlling weight." TR at 23.

Plaintiff did not advance any contrary authority. Rather, she believes that objective medical evidence supports the medical conclusions of her treating physicians, and the ALJ should have

placed greater weight on their opinions. In support, Plaintiff's objection notes the observations of Dr. Ottoni, Dr. Mahadevan, and Dr. Bhardwaj. Plaintiff did not, however, address the evidence inconsistent with the treating physicians' opinions that the ALJ relied upon. Rather, most of the proffered medical opinions rely on Plaintiff's subjective statements of pain. *See* dkt. # 17 at 4-6. As Judge Mazjoub indicated, the record contains substantial evidence contrary to her treating physician's opinions.

For instance, Dr. Ottoni noted that Plaintiff's carpal tunnel syndrome was improving after surgery and "would gradually resolve over the next few months." TR at 160. Moreover, Dr. Shelby-Lane noted that Plaintiff's "[g]rip strength is equal bilaterally . . . [and her] gross and fine dexterity appear bilaterally intact." TR at 232. Additionally, Plaintiff's treating physicians, Dr. Mahadevan and Dr. Bhardwaj, acknowledged that she could use both of her hands for simple grasping and fine manipulating. TR at 260, 268. Thus, substantial evidence exists contrary to Plaintiff's treating physicians' opinions that she is disabled, and the ALJ could reasonably choose not to defer to their opinions in light of the record.

IV

Under the governing standards, the Court agrees that "the ALJ's decision was within the range of discretion allowed by law and is supported by substantial evidence." Dkt. # 16 at 18.

Accordingly, it is **ORDERED** that the report and recommendation [Dkt. # 16] is **ADOPTED**. Plaintiff's objection to the report and recommendation [Dkt. # 17] is **OVERRULED**.

It is further **ORDERED** that Defendant's motion for summary judgment [Dkt. # 12] is **GRANTED**.

It is further **ORDERED** that Plaintiff's motion for summary judgment [Dkt. # 10] is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: August 15, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 15, 2008.

s/Tracy A. Jacobs
TRACY A. JACOBS